UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAPAL, INC.,

        Plaintiff,

                                  Case No. 15-cv-12159

v.                                  HON. GERSHWIN A. DRAIN

ABDELATIF ATARSIA and
YG-1 USA, INC.,

        Defendants.

_____/

**ORDER DENYING DEFENDANT**
**ABDELATIF ATARSIA'S MOTION TO DISMISS [#26]**

## I. INTRODUCTION

On June 12, 2015, Plaintiff MAPAL, Inc. filed a Complaint against Defendants Abdelatif Atarsia ("Atarsia") and YG-1 USA, Inc. ("YG-1"). Atarsia filed a motion to dismiss on August 20, 2015 [#17], but Plaintiff filed an Amended Complaint ("FAC") on September 4, 2015.[1] In the FAC, Plaintiff alleges: (a) breach of employment agreement by Atarsia (Count I); (b) breach of fiduciary duty by Atarsia (Count II); (c) conspiracy by Atarsia and YG-1 (unnumbered count, hereinafter treated as Count III); and (d) tortious interference by YG-1 (labeled Count III but hereinafter treated as Count IV). On September 21, 2015, Atarsia filed a Motion to Dismiss the FAC [#26], which motion was fully briefed. A hearing was held on November 23, 2015. For the reasons that follow, Atarsia's Motion to Dismiss is DENIED as to Count I and GRANTED as to Counts II and III.

## II. FACTUAL BACKGROUND

---

[1] In light of Plaintiff filing an Amended Complaint, Atarsia's August 20, 2015 Motion to Dismiss [#17] is denied as moot. Significantly, however, Atarsia's August 20, 2015 Motion to Dismiss did serve as notice to Plaintiff that Atarsia was arguing that Plaintiff's allegations were not sufficiently pled, and Plaintiff had an opportunity to redraft its allegations in such a manner as to plead actionable claims.

As alleged in the FAC, Plaintiff is a "domestic for profit Michigan corporation" that is "a wholly owned subsidiary of MAPAL Fabrik fur Prazisionswerkzeuge Dr. Kress KG." *See* FAC ¶ 2. Plaintiff describes its line of business as follows:

> With MAPAL Fabrik, MAPAL is a worldwide manufacturer and supplier of precision tools for metal machining, including a complete program based on bore machining, cutting tools and other related precision metal working and cutting tools, which service the automobile, aerospace, truck and manufacturing industries.

*Id.*

Atarsia is a resident of Montreal, Quebec, Canada, who was employed by Plaintiff from February 2012 to April 10, 2015. FAC ¶ 3. At or near the time Atarsia began working for Plaintiff, the parties entered into an Employment Agreement (the "Agreement"). FAC, Ex. B. Atarsia, who holds a Ph.D. in mechanical engineering, was hired as Plaintiff's "Aerospace Manager" for "business and market development for current and potential customers for the North America (Canada, United States and Mexico) aerospace and composite fiber industry in North America, as well as any other duties assigned or delegated to him by [Plaintiff]." FAC, Ex. B at ¶ 1. Atarsia's duties as Aerospace Manager included: (a) developing trading partners for Plaintiff for distribution in the aerospace market, (b) developing and implementing a training program for regional sales managers and executive staff on the aerospace market, (c) being responsible for the engineering and assessment of production tooling sales and customer service, (d) engineering development and implementation of sales strategies and plans to acquire new business for Plaintiff, and (e) providing an engineering level assessment of tools used for warranty issues. FAC ¶ 9. In furtherance of those duties, Atarsia: (1) worked with Plaintiff professionals and suppliers to develop cost quotes for Plaintiff products to be sold to customers, (2) provided technical support to customers, (3) provided engineering level evaluations of proposed systems and component materials to ensure cost effective

2

final products with quality parameters, and (4) prepared and delivered on Plaintiff's behalf technical presentations that explained Plaintiff's products and services to customers and prospective customers. *Id.* at ¶ 10.

The Agreement contained a confidentiality provision that states, in part:

> Employee acknowledges that as a result of his agreement [with] Employer, he will become informed of, and have access to, confidential information of Employer…and that such information is the exclusive property of Employer. Accordingly, Employee shall maintain confidentiality with respect to such information that he received in the course of his contract and not disclose any such information. Further, Employee shall not, at any time subsequent to his contract, unless compelled by legal process, use, copy, reveal, publish, transfer, or otherwise disclose to any person, corporation or other entity, any of Employer's confidential information without the express consent of Employer....

FAC, Ex. B at ¶ 4. Plaintiff alleges that Atarsia "did, in fact, become informed of, and had access to, Plaintiff's confidential, proprietary and trade secret information, including but not limited to its production capabilities, product design, quality parameters, cost and pricing methodologies, its customers and prospective customers, its sales strategies and its plans to acquire new business." FAC ¶ 12.

The Agreement also contained a non-competition provision that states, in relevant part:

> During the term of this Agreement and for a period of twelve (12) months following the termination of his contract, . . . Employee shall not directly own, manage, operate, join, control, or participate in or be connected with, as an officer, employee, partner, stockholder, or otherwise, any other entity that is at the time engaged principally or significantly in a business that is, directly or indirectly, at the time in competition with the business of Employer anywhere in the world.

FAC, Ex. B at ¶ 6. Under the Agreement, Plaintiff could terminate Atarsia with or without cause at any time. *Id.* at ¶ 5. Atarsia was required to give Plaintiff three months notice if he elected to terminate his employment without cause. *Id*.

Atarsia resigned his employment with Plaintiff by submitting a resignation notice on March

3

25, 2015.[2] FAC ¶ 24. *See also* FAC, Ex. C.  Plaintiff notified Atarsia that the three-month notice clause would be enforced, but Atarsia notified Plaintiff that April 10, 2015 would be his last day. FAC ¶¶ 25, 26.  Plaintiff later advised Atarsia that: (a) his service would not be needed after April 10, 2015, but (b) he would remain a Plaintiff employee until June 25, 2015, subject to the terms of the Agreement. *Id.* at ¶ 27.  Shortly thereafter, Plaintiff learned that Atarsia had begun working for or on behalf of YG-1, a company that Plaintiff maintains is a direct competitor of Plaintiff in the aerospace industry. *Id.* at ¶ 28.  On May 1, 2015, Plaintiff sent cease and desist letters to Atarsia and YG-1's CEO. *Id.* at ¶ 29.  An executive at YG-1 then contacted Plaintiff's CEO and threatened to hire away all of Plaintiff's sales employees if Plaintiff did not drop its efforts to require Atarsia to comply with the terms of the Agreement. *Id.* at ¶ 31.

### III.  LAW & ANALYSIS

#### A.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows the court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6).  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true."

---

[2]Plaintiff also alleges that Atarsia gave written notice of his intent to resign on December 18, 2014, but he rescinded that notice on December 24, 2014. FAC ¶ 22.  Atarsia continued his employment until March 25, 2015, when he submitted a "second resignation notice." FAC ¶ 24.

*Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atlantic*, 550 U.S. at 555).

The court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims.  To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations and quotations omitted).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.*  The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief.'" *Id.* at 1950.

The district court generally reviews only the allegations set forth in the complaint in determining whether to grant a Rule 12(b)(6) motion to dismiss, however "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin College*, 259 F. 3d 493, 502 (6th Cir. 2001).  Documents attached to a defendant's "motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Id.*

**B.    Count I - Breach of Employment Agreement**

5

Plaintiff's breach of contract claim is based on Atarsia's alleged breach of the non-competition provision of the Agreement because Atarsia was "employed by and/or work[ed] for [Plaintiff's] competitors, YG-1 and Minicut" both before and after June 25, 2015. Atarsia argues that the non-compete provision, as written, is: (1) on its face, overly broad both geographically and as to the types of employment or lines of business that it covers, and (2) therefore, unreasonable and unenforceable under Michigan law, as written.[3] Plaintiff argues that the non-compete provision is reasonable and that, alternatively, pursuant to M.C.L. § 445.774a(1), the non-compete can be limited by the Court to the extent that the Court deems it unreasonable.

### 1.    Non-compete is Unreasonably Overbroad and Unenforceable

As Atarsia argues, non-competition agreements "'are disfavored as restraints of commerce and are only enforceable to the extent they are reasonable.'" *Teachout Security Services, Inc. v. Thomas*, 2010 WL 4104685, at *1 (Mich. Ct. App. Oct. 19, 2010) (quoting *Coates v. Bastian Brothers, Inc.*, 276 Mich. App. 498, 507 (2007)). "The burden of demonstrating the validity of the agreement is on the party seeking enforcement" – in this case, Plaintiff. *Coates*, 276 Mich. App. at 507. Further, "'[b]ecause the prohibition on all competition is in restraint of trade, an employer's business interest justifying a restrictive covenant must be greater than merely preventing competition.'" *Innovation Ventures, L.L.C. v. Liquid Mfg., L.L.C.*, 2014 WL 5408963, at *5 (Mich. Ct. App. Oct. 23, 2014), *appeal granted*, 865 N.W.2d 28 (Mich. 2015) (quoting *St. Clair Medical, P.C. v. Borgiel,* 270 Mich. App. 260, 266 (2006)). "'To be reasonable in relation to an employer's competitive business interest, a restrictive covenant must protect against the employee's gaining some unfair advantage in competition with the employer, but not prohibit the employee from using

---

[3]Atarsia does not challenge the duration of the non-compete.

general knowledge or skill.'" *Capaldi v. LiftAid Transp., L.L.C.,* 2006 WL 3019799, at *4 (Mich. Ct. App. Oct. 24, 2006) (quoting *St. Clair Medical,* 270 Mich. App. at 266.)  Thus, "Michigan law commands the courts to narrowly construe restrictive covenants." *Whirlpool Corp. v. Burns,* 457 F. Supp. 2d 806, 812 (W.D. Mich. 2006).

As summarized in *St. Clair Medical*, a non-compete agreement is enforceable if it: (a) protects the employer's reasonable competitive business interests, and (b) is reasonable in duration, geographical scope, and type of employment or line of business. *St. Clair Medical*, 270 Mich.App. 266.  The employer's reasonable competitive business interests include "preventing the anticompetitive use of confidential information." *Rooyakker & Sitz, PLLC v Plante & Moran*, 276 Mich.App. 146, 158 (2007) (quotation marks omitted).  Reasonable competitive business interests also include protecting "close contact with the employer's customers or customer lists, or cost factors and pricing." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 547 (6th Cir. 2007) (quotation marks omitted).

It is undisputed that Plaintiff has sufficiently alleged that it had a multitude of reasonable competitive interests it sought to protect by entering into a non-compete with Atarsia, namely that Atarsia was intimately familiar with, and in fact was the leader of, Plaintiff's aerospace and composite fiber business.[4]  Plaintiff suggests that YG-1 would have an unfair competitive advantage if Atarsia could take all of the knowledge and information he acquired at Plaintiff and

---

[4]Plaintiff alleges that Atarsia was assigned to lead MAPAL's efforts in business and market development for the North American aerospace and composite fiber industry. FAC ¶ 8. His duties included implementing sales strategies and plans for new business, developing cost quotes for Plaintiff's products, providing technical support to customers, evaluating proposed systems and materials for cost effectiveness and quality, and technical presentations on Plaintiff's products and services. *Id.* at ¶¶ 9-10. His role also included access to confidential information of Plaintiff regarding its production capabilities, product design, quality parameters, cost and pricing methodologies, customers and prospective customers, and its sales strategies. *Id.* at ¶¶ 11-12.

7

utilize that information to enable YG-1 to compete with Plaintiff.  As Plaintiff notes, all of these interests have been recognized as legitimate protectable interests under Michigan law. *See, e.g., Edwards Publications, Inc. v. Kasdorf,* 2009 Mich. App. LEXIS 109, at \*\*11-13 (Mich.Ct.App. Jan. 20, 2009) (enforcing non-compete where defendant would gain an unfair advantage in competition with plaintiff after years of acquiring a unique insight into its business operations from her employment with plaintiff).  For these reasons, the Court finds that Plaintiff has sufficiently alleged that it had reasonable competitive business interests to protect *vis a vis* Atarsia.

Atarsia's Motion to Dismiss, however, focuses on the lack of reasonableness of the non-compete in the Agreement, as written.  Atarsia first contends that it is overbroad geographically in that it bars Atarsia from working for any company that is "in competition with the business of [Plaintiff] ***anywhere in the world***." FAC, Ex. B, at ¶ 6 (emphasis added). Atarsia asserts that courts regularly refuse to enforce non-competition agreements that lack geographic restrictions, unless "the plaintiff's business is sufficiently national and international in scope." *See, e.g., Whirlpool*, 457 F. Supp. 2d at 813 (citing *Lowry Computer Prods., Inc. v. Head*, 984 F.Supp. 1111, 1116 (E.D. Mich. 1997)).  Even though Whirlpool was a national and international company, the court found the non-compete geographically overbroad and far beyond Whirlpool's "reasonable competitive business interests" as it related to a particular employee (Burns) because:

> "Geographic limitations in non-competition agreements must be tailored so that the scope of the agreement is no greater than is reasonably necessary to protect the employer's legitimate business interests." Because ¶ 6(b) contains no geographical limitation, it would essentially bar Burns from selling home appliances anywhere in the world for a one year period, even if such sales did not involve any of the same customers he served during his tenure at Whirlpool or the use of confidential information obtained from Whirlpool.

8

*Whirlpool Corp.*, 457 F. Supp. 2d at 813 (citations omitted).[5]

Plaintiff counters that the non-compete is reasonable in geographic area because, although it covers "the business of [Plaintiff] anywhere in the world," its aerospace market is solely North America and the FAC only requests that Atarsia be enjoined from competing in North America. FAC, at p. 20 (Prayer for Relief).  Plaintiff states this is consistent with Atarsia's duties of leading all business and market development efforts for Plaintiff in "the North America (Canada, United States and Mexico) aerospace and composite fiber industry . . ."  Plaintiff's argument that it is only seeking to have the non-compete apply to the aerospace industry in North America, however, only undermines Plaintiff's contention that the "anywhere in the world" prohibition in the non-compete, as written, is geographically reasonable.  Such argument is better suited to support a contention that the non-compete should be rewritten/revised by the Court (and perhaps how it should be rewritten/revised).

Plaintiff also argue that it has alleged that "[w]ith MAPAL Fabrik, MAPAL is a worldwide manufacturer and supplier of precision tools for metal machining," FAC ¶ 2.  Atarsia did not enter into a non-compete with MAPAL Fabrik, however, as the Agreement was with Plaintiff, a separate corporate entity. FAC, Ex. B.  Significantly, Plaintiff does not allege in the FAC that Plaintiff itself has global business interests that would justify a geographically unlimited non-compete in the aerospace industry.  Finally, Plaintiff cites several cases that hold that preventing a former employee

---

[5]Atarsia also relies on the following cases: *Gateway 2000, Inc. v. Kelley*, 9 F. Supp. 2d 790, 797 (E.D. Mich. 1998) (denying preliminary injunction where non-compete had "the practical effect of preventing Kelley from working in any capacity for any computer-related company anywhere in the world."); *New World Systems Corp. v. Jones*, 2009 WL 996954, at *12 (E.D. Mich. April 14, 2009) (denying preliminary injunction where plaintiff failed "to show a legitimate interest that is served by the unrestricted geographic limitation….); *Capaldi*, 2006 WL 3019799, at *5 ("the agreement [did not] establish that protection of LAT's legitimate business interests from Capaldi gaining an unfair advantage in competition required the comprehensive prohibition, extending worldwide.").

from competing in the geographical area in which they worked for the former employer is not *per se* unreasonable and is generally upheld.[6] These cases do not support a finding that the non-compete in the Agreement is reasonable as it relates to Atarsia, however, because the geographic scope of the non-compete at issue in this case ("anywhere in the world") extends far beyond the geographic scope of Atarsia's duties (in North America).

For the reasons set forth above, specifically that Plaintiff's aerospace business – and Atarsia's duties pursuant to the Agreement – extended only to North America, the Court will find that the non-compete is unreasonable on its face based on its geographic overbreadth, and thus unenforceable, as written.

Atarsia also asserts that the non-compete is facially overbroad as to the lines of business and types of employment from which he would be barred. Atarsia argues that the non-compete precludes him from, on a worldwide basis, joining a "direct or indirect" competitor in any capacity, even as to industries with which he had no involvement while at Plaintiff. *See New World Systems*, 2009 WL 996954, at *12 (emphasis added) ("[a] limitation on working *in any capacity* for a competitor of a former employer is too broad to be enforceable."). As Atarsia notes, Plaintiff alleges in the FAC that it does business in the "automobile, aerospace, truck and manufacturing industries." FAC ¶ 2. Thus, based on the plain language of the non-compete, Atarsia would not only be barred

---

[6]Citing *Owens v. Hatler*, 373 Mich. 289, 293 (1964) (non-compete "may be as broad as the business covered by the agreement and of sufficient scope to prevent competition therewith"); *Lowry Computer Prods. v. Head*, 948 F.Supp. 1111, 1116 (E.D. Mich. 1997) (enforcing unlimited geographic scope in "highly competitive" industry where employer serviced accounts in and various foreign countries); *ACS Consultant Co. v. Williams*, 2006 WL 897559, at *7 (E.D. Mich. Apr. 6, 2006) (upholding agreement prohibiting competition in all 50 states because service provided in all 50 states); *Capaldi v. LiftAid Transp., L.L.C.*, 2006 WL 3019799, at *4 (Mich.Ct.App. Oct. 24, 2006) ("A restriction that is not limited in its geographic scope is not necessarily unreasonable"); *New World Systems Corp. v. Jones*, 2009 WL 996954 (E.D. Mich. Apr. 14, 2009) (a non-competition agreement without any geographic limitations "can be reasonable if the employer actually has legitimate business interests throughout the world.").

from working in the aerospace and composite fiber industry, he would also be barred from working in the automobile, truck and manufacturing industries, *i.e.*, lines of business and types of employment in which he did not work while employed by Plaintiff.   Such overbreadth is impermissible under Michigan law. *See, e.g., Gateway 2000*, 9 F. Supp. 2d at 797 ( a non-compete that "limited [the employee] from working as an 'individual, partner, shareholder, director, officer, principal, agent, consultant, [or] employee' for any company directly or indirectly competitive with Gateway in any state or country where Gateway sells its product" was unenforceable because it had "the practical effect of preventing [the employee] from working in any capacity for any computer-related company anywhere in the world.").[7]

Plaintiff counters that the line of business the non-compete applies to is limited to entities "engaged principally or significantly in a business that is, directly or indirectly . . . in competition with the business of [Plaintiff] . . . . FAC ¶ 6.  Plaintiff states that its business, "at least as it pertains to Atarsia, was further defined as the 'aerospace and composite fiber industry . . ." FAC, Ex. B., ¶ 1.  Plaintiff thus argues that "[t]aking these two limitations together, this Court could reasonably construe the non-compete as preventing Atarsia from becoming engaged in the aerospace and composite fiber industry with a business that competes for business with" Plaintiff.  Plaintiff argues that such a restriction on competition is "inherently considered reasonable." Citing *Best Team Ever v. Prentice*, 2015 Mich.App. LEXIS, at **11-12 (June 23, 2015) (a limitation to "the business of restaurants, catering and all related goods and services and other activities engaged in by Employer

_____

[7]In *Gateway*, the former employee worked as a manufacturing engineer supervisor at Gateway headquarters and oversaw the construction and expansion of a new plant (including preventative maintenance of the building, upkeep of the cafeteria and oversight of the janitorial staff). *Id.* at 791.  Though the former employee had access to some confidential information, he did not have access to any particularly sensitive or specialized information, and nothing especially secretive.  Nonetheless, the effect of the *Gateway* non-compete was to bar the former employee from working in any capacity for any computer company in the world.

at the time Employee ceases to be employed" was reasonable).  Once again, however, Plaintiff's argument focuses on language or provisions aside from the plain language of the non-compete. Thus, Plaintiff's argument actually undermines its contention that the non-compete, as written, is reasonable with respect to the line of business or type of employment it prohibits.  In other words, Plaintiff's argument is again better suited to support a contention that the non-compete should be rewritten/revised by the Court (and perhaps how it should be rewritten/revised).

For the foregoing reasons, the Court will find that the non-compete is overbroad as it relates to the line of business and type of employment it bars Atarsia from working in.

In sum, Plaintiff has not set forth allegations that sufficiently support the position that Plaintiff's legitimate business interests necessitated the far-reaching restrictions of the non-compete, nor did Plaintiff sufficiently allege how the non-compete was aimed at protecting the company from Atarsia gaining an unfair advantage in competition, rather it operates simply to prevent all competition. *See Capaldi*, 2006 WL 3019799, at *5 (citing *St. Clair Medical*, 270 Mich.App. at 266).  Therefore, based on the geographic and line of business/type of employment overbreadth of the non-compete, the Court will hold that Plaintiff has failed to state a claim on which relief can be granted, to the extent Plaintiff seeks enforcement of the non-compete as written.

2.     *M.C.L. § 445.774a(1)*

Neither the FAC nor Plaintiff's response to Atarsia's Motion to Dismiss focus on the enforceability of the non-compete as written.  Instead, Plaintiff asserts that the Court has authority under M.C.L. § 445.774a(1) to limit any unreasonable aspect of the non-compete provision, a proposition that Atarsia does not dispute.  M.C.L. § 445.774a(1) permits employers and employees to enter into non-competition agreements that reasonably protect the employer's legitimate

competitive interests and grants courts the discretion to rewrite non-compete provisions to the extent

such non-compete provisions are not reasonable.  Section 774a(1) states, in part:

> An employer may obtain from an employee an agreement or covenant which protects
> an employer's reasonable competitive business interests and expressly prohibits an
> employee from engaging in employment or a line of business after termination of
> employment if the agreement covenant is reasonable as to its duration, geographical
> area, and the type of employment or line of business.  To the extent any such
> agreement or covenant is found to be unreasonable in any respect, a court may limit
> the agreement to render it reasonable in light of the circumstances in which it was
> made and specifically enforce the agreement as limited.

As Plaintiff states, "*even if* this Court finds any aspect of the non-compete to be

unreasonable, it has the express power by statute to revise the non-compete to limit it to a reasonable

duration." (Doc. No. 28, Pg ID 574 (emphasis in original)).  Relying on Section 774a(1), Plaintiff

contends that Atarsia's "all or nothing" proposition is erroneous and that the Court can and should

limit any unreasonable aspect of the non-compete Atarsia signed "in light of the circumstances in

which it was made."  Plaintiff requests that the Court enforce the Agreement by limiting the line of

business aspect of the non-compete to the "aerospace and composite fiber industry" and limiting the

geographic scope of the non-compete to North America or such other region as the Court deems

reasonable, *e.g.*, the geographic area in which Atarsia marketed Plaintiff's aerospace products and

services.

Atarsia acknowledges that the Court can rewrite the non-compete provision.  Atarsia

contends, however, that if Plaintiff wants to seek a more limited enforcement of the non-compete,

Plaintiff "may seek such relief from the Court at an appropriate time." (Doc. No. 26, Pg ID 441).

The Court, however, finds that the FAC, Plaintiff's response to Defendant's Motion to Dismiss, and

Plaintiff's argument at the hearing demonstrate that Plaintiff commenced this lawsuit for purposes

of enforcing the non-compete in a reasonable manner.  Plaintiff's intentions are best evidenced in

Plaintiff's prayer for relief in the FAC, wherein Plaintiff asks that the non-compete be limited to limiting Atarsia from being "a partner, director, officer, employee, consultant, representative or agent in any other capacity, in North America in the Aerospace precision cutting tool industry through and including June 25, 2016 . . ." (Doc. No. 23, Pg ID 286).

For the reasons set forth above, the Court holds that Plaintiff's breach of contract claim at Count I of the FAC shall proceed, provided that the question of whether Atarsia breached the Agreement shall be considered based on the non-compete provision being revised as follows:

> During the term of this Agreement and for a period of twelve (12) months following the termination of his contract, except where the termination is without cause by the Employer. Employee shall not be a partner, director, officer, employee, consultant, representative or agent in any other capacity, in North America in the Aerospace precision cutting tool industry.

Finally, for the reasons set forth above, the Court denies Atarsia's motion to dismiss as to Plaintiff's breach of contract claim at Count I of the FAC.

## C.     Count II - Breach of Fiduciary Duty

In Count II, Plaintiff alleges that Atarsia breached his fiduciary duties by working for or with YG-1 while he was still "employed" by Plaintiff, *i.e.*, between April 10, 2015 and June 25, 2015. FAC ¶ 58. Plaintiff also alleges that Atarsia breached his fiduciary duties by "using information he obtained in MAPAL's employ to contact an Aerospace industry distributor on behalf of YG-1 USA and/or Minicut in order to compete with MAPAL." *Id*. at ¶ 59.

Atarsia argues that Plaintiff cannot bootstrap Atarsia's alleged contractual obligation pursuant to the non-compete and/or confidentiality provisions into a tort claim for breach of fiduciary duty because, under Michigan law, it is well-established that a tort action cannot be brought where it is based solely on an alleged breach of a contract. Citing *Fultz v. Union-Commerce*

14

*Assocs.*, 470 Mich. 460, 467 (2004) ("if no independent duty exists, no tort action based on contract will lie."). *See also Hamilton v. Nochimson,* 2010 WL 743111, at *3 (E.D. Mich. March 1, 2010) (dismissing breach of fiduciary duty and conversion claims where claims "[w]ere not separate and distinct from the duties imposed by the parties' agreement.").

Plaintiff acknowledges that a typical employee-employer relationship likely would not warrant the finding of a fiduciary relationship. *Muglia v. Kaumagraph Corp.*, 64 F.3d 663 (6th Cir. 1995). *See also Edwards Publications, supra.* Plaintiff contends, however, that the "separate and distinct 'mode of analysis' upon which Atarsia relies was considerably 'clarified' by" *Loweke v. Ann Arbor Ceiling & Partition Co., L.L.C.*, 489 Mich. 157 (2011) (holding, in part, that the existence of a contractual relationship does not erase or distinguish an employee's common law duties to his employer).

The *Loweke* court stated:

> Stated another way, under the "separate and distinct mode of analysis," "'[e]ntering into a contract with another pursuant to which one party promises to do something does not alter the fact that there [exists] a preexisting obligation or duty to avoid harm when one acts.'" (Citations omitted).

> Thus, under *Fultz,* while the mere existence of a contractual promise does not ordinarily provide a basis for a duty of care to a third party in tort, "the existence of a contract [also] does not extinguish duties of care otherwise existing . . . ." 1 Torts: Michigan Law and Practice, § 10.18, p 10-25; *see also Fultz,* 470 Mich at 468-469. *Fultz* did not extinguish the "simple idea that is embedded deep within the American common law of torts . . .: if one 'having assumed to act, does so negligently,' then liability exists as to a third party for 'failure of the defendant to exercise care and skill in the performance itself.'" *Davis,* 568 F.3d. at 575, quoting *Hart,* 347 Mich. at 564.

> In summary, "[w]hether a particular defendant owes *any duty at all* to a particular plaintiff [in tort]," *Fultz,* 470 Mich at 467 (emphasis added), is generally determined without regard to the obligations contained within the contract, *Davis,* 568 F3d at 577. *See, also, Churchill v Howe ,* 186 Mich 107, 114, 152 NW 989 (1915) (explaining that although a tort can grow out of a contract, in general, a tort

15

is a "wrong independent of a contract"). (Emphasis added.)

Plaintiff argues that Atarsia owed Plaintiff common law duties, "including a fiduciary duty of faith, confidence and trust," that were not solely dependent on the Agreement and that Atarsia violated those duties by accepting work or employment with YG-1, a competitor, while still employed by Plaintiff. Plaintiff argues that the Court "should not permit the contents of the contract [with Plaintiff] to obscure" Atarsia's independent duties, but Plaintiff does not specify what those independent duties involved — rather Plaintiff simply stated that they included "a fiduciary duty of faith, confidence and trust."

Plaintiff's reliance on *Loweke* for the proposition that a contract does not erase or extinguish independent common law duties is misplaced. First, *Loweke* is irrelevant to the issues before the Court because if Atarsia was still an "employee" of Plaintiff between April 10 and June 25, 2015 (as Plaintiff claims), it was only by virtue of the fact that the three-month pre-termination notice period contained in the Agreement had not yet expired. In other words, if Atarsia was legally prohibited from going to work for YG-1 as of April 11, 2015, the source of that prohibition was the Agreement, not any independent source. Second, the facts and holding of *Loweke* are inapposite to this case, as that case involved a negligence claim as the result of physical harm to a third party. *Id.* at 172 ("a contracting party's assumption of contractual obligations does not extinguish or limit separate, preexisting common-law or statutory tort duties owed to noncontracting third parties in the performance of a contract.").[8]

---

[8]Plaintiff also argues that a breach of fiduciary duty claim exists at common law and is not dependent on an employment contract. Citing *In re Estate of Cummin (after remand)*, 267 Mich.App. 700, 701-06 (2005), *rev'd in part on other grounds* 477 Mich. 1117 (2006); *Miller v. Magline, Inc.*, 76 Mich.App. 284, 313 (1977); *Prentis Family Foundation v. Barbara Ann Karmanos Cancer Institute*, 266 Mich.App. 39, 49 (2005). None of these cases support Plaintiff's argument, however, as none of them involved the allegation of a breach of fiduciary duty claim and a breach of contract claim.

Atarsia also argues that the alleged wrongful use of "information" by Atarsia fails because Plaintiff does not allege that Atarsia improperly disclosed or otherwise used anything that could be considered a trade secret or confidential information of Plaintiff.  Atarsia states that the closest Plaintiff comes is alleging that "Atarsia has utilized *information* obtained by him during his Plaintiff employment by directly contacting an Aerospace distributor regularly engaged by [Plaintiff]." FAC ¶¶ 40, 59 (emphasis added). Plaintiff does not say what this "information" was, nor does it allege any facts from which the Court could conclude that this "information" was protected information of Plaintiff. *See, e.g., Aronson v. Quick Point Pencil Co.,* 440 U.S. 257, 262 (1979) ("[I]deas in the public domain remain there for the free use of the public."); *Foster-Miller, Inc. v. Babcock & Wilcox Canada,* 210 F.3d 1, 10 (1st Cir. 2000) ("Information that is … readily known or knowable to the interest of the public cannot … be made confidential simply by slapping it with a restrictive label."). At most, Plaintiff alleges that Atarsia: (1) held a unique and critical position in leading its efforts to build and develop Plaintiff's aerospace business, and (2) had access to a great deal of Plaintiff's confidential and important business and information.

For the reasons discussed above, the Court will dismiss Plaintiff's breach of fiduciary duty claim at Count II of the FAC.

## D.    Count III - Conspiracy

Plaintiff claims that Atarsia and YG-1 conspired to breach Atarsia's non-compete by "employing or otherwise contracting with him to provide sales and marketing services to YG-1 USA and Minicut in a directly competitive industry to [Plaintiff]." FAC ¶ 63.  A viable civil conspiracy claim requires that a plaintiff allege: (1) a concerted action, (2) by a combination of two or more persons, (3) to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by

criminal or unlawful means. *See, e.g., Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 194 Mich.App. 300, 313 (1992). There is no dispute that the allegations in the FAC satisfy elements (1) and (2). Atarsia contends, however, that Plaintiff's allegations are insufficient to satisfy element (3).

Atarsia cites several cases where the court held that one party to a contract cannot assert a claim against another party to the contract for conspiring to breach the agreement, but only one of those cases applies Michigan law.[9] "In Michigan, a claim for civil conspiracy requires a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Specialized Pharmacy Services, LLC v. Magnum Health and Rehab of Adrian, LLC,* 2013 WL 1431722, at *4 (E.D. Mich. April 9, 2013) (citation omitted) (dismissing conspiracy claim where underlying breach of contract claim was not "an actionable tort."). "Notably, a claim for civil conspiracy may not exist in the air; 'rather, it is necessary to prove a separate, actionable tort.'" *Id.* (citations omitted).[10] Atarsia argues that Plaintiff's conspiracy claim should be dismissed because, as discussed above, there is no underlying actionable tort and a party to an agreement cannot conspire to breach it.

---

[9]Atarsia relies on the following cases from non-Michigan jurisdictions, none of which applied Michigan law. *Am. Crown Life Ins. Co. v. Dickson*, 748 F. Supp. 184, 188 (S.D.N.Y. 1990) ("[O]ne party to a contract does not have a cause of action against another party to the contract for conspiracy to breach the agreement between them."); *In re Stevens*, 2000 WL 35723732, at *9 (Bankr. D. Vt. Oct. 24, 2000) ("[I]t is a long established doctrine that one does not have a cause of action against another contracting party for a 'conspiracy' to breach the contract between them."); *BOKF, N.A. v. BCP Land Co., LLC,* 2015 WL 2354386, at *6 (W.D. Mo. May 15, 2015) ("Under Missouri law, '[a] party to the contract cannot be held responsible for inducing himself to commit a breach or for conspiring to breach it.'"). Atarsia contends the reason for this sound rule was explained in *Hicks v. Bryan Med. Grp., Inc.,* 287 F. Supp. 2d 795, 814 (N.D. Ohio 2003) (citations omitted), where the court stated that "a party cannot be held liable for conspiring to breach his own contract" because "recognizing a claim for conspiracy to breach a contract permits a plaintiff to 'restate as a conspiracy that which amounts to nothing more than breach of contract' allowing him 'to metamorphose a contract claim into a tort.'"

[10]Atarsia also argues that Michigan courts have repeatedly rejected theories of recovery that blur the distinction between tort and contract and that would allow a party to recover tort-based remedies arising out of a breach of a contract. Citing *Neibarger v. Universal Cooperatives, Inc.*, 439 Mich. 512 (1992); *Valentine v. Gen. Am. Credit, Inc.,* 420 Mich. 256, 263 (1984); *Fultz,* 470 Mich. at 470 (2004). None of these case, however, address whether a civil conspiracy claim may be brought against a (former) employee and the employee's new employer.

Plaintiff cites one Michigan case for the proposition that a civil conspiracy claim can proceed against a former employee and her new employer. *Edwards Publications,* 2009 Mich.App. 109, at *19 (holding that the trial court erred in summarily dismissing the plaintiff's civil conspiracy claim).

> Because both of the non-compete provisions precluded Kasdorf from working for Bilbey, the civil conspiracy claim can proceed where there is evidence that Bilbey and Kasdorf were aware of the non-compete provisions, yet by a concerted effort Bilbey hired Kasdorf, thereby accomplishing the unlawful purpose of employing Kasdorf in a field that violated contractual rights.

*Id.* In this case, Plaintiff has alleged that YG-1 hired and continued to employ Atarsia after having notice of the non-compete and that YG-1's agent, Shane Hollenbaugh, threatened to hire other Plaintiff employees in retaliation for Plaintiff insisting that YG-1 cease employing Atarsia. Plaintiff thus argues that the Court should find that such allegations are sufficient to establish an unlawful purpose and to enable Plaintiff to survive a motion to dismiss for failure to state a claim of conspiracy involving Atarsia and YG-1.

As Atarsia argues, however, the *Edwards Publications* case is: (1) an unpublished case, which is not binding on this Court, and (2) more significantly, the quoted language from that court set forth above constituted the totality of that court's consideration of the issue, *i.e.*, the *Edwards Publications* court did not cite to any other cases or authority, nor did it engage in any analysis of the issue. As such, the Court is not persuaded that  it should follow the conclusory ruling of *Edwards Publications*. Instead, the Court will adhere to the overwhelming authority that stands for the proposition that a party to a contract cannot conspire to breach that contract.

Atarsia also contends that, to the extent Plaintiff can be found to have alleged an underlying tort because of the "YG-1 [representative] threatening to target MAPAL's employees for retaliatory hiring by YG-1 USA if MAPAL did not refrain from seeking to enforce its contractual rights as to

19

Atarsia," Plaintiff's civil conspiracy claim fails because Plaintiff has suffered no injury. Specifically, Atarsia asserts that Plaintiff has failed to allege that Plaintiff suffered any harm, such as the loss of customers or business, as a result of these alleged threats, *i.e.*, some harm, such as the loss of customers or business.

In *Fenestra Inc. v. Gulf Am. Land Corp.*, 377 Mich. 565, 593-94 (1966) (emphasis added), the Michigan Supreme Court explained that:

> [A]t the core of an actionable civil conspiracy is a question of damages. This facet of the law of conspiracy is accurately summed up in … *Roche v. Blair*: "The law is well established that in a civil action for damages resulting from wrongful acts alleged to have been committed in pursuance of a conspiracy, *the gist or gravamen of the action is not the conspiracy but is the wrongful acts causing the damages. The conspiracy standing alone without the commission of acts causing damage would not be actionable*. The cause of action does not result from the conspiracy but from the acts done." In … *Auto Workers' Temple Ass'n v. Janson*, the point is made more succinctly: the foundation of the action is the damage and not the conspiracy.

*See also Auto. Support Grp., LLC v. Hightower*, 503 F. App'x 411, 419 (6th Cir. 2012) ("[T]he core of an actionable civil conspiracy is a question of damages.") (citation omitted).  Atarsia asserts that there is no allegation that YG-1 so much as contacted a single Plaintiff employee, let alone hired one away resulting in some cognizable damage to Plaintiff.  Therefore, Atarsia asserts that YG-1's alleged "retaliatory hiring" threats cannot support a conspiracy claim.

Plaintiff argues that it has alleged it suffered damages as a result of the conspiracy, even though it has not itemized damages. Citing FAC ¶¶ 66 ("As a direct and proximate cause of Defendants' unlawful conspiracy and the acts taken in furtherance thereof, including the threat of hostile hiring action by Mr. Hollenbaugh, [Plaintiff] has been and will continue to be damaged in an amount to be proven at trial.") and 67 ("Defendants, as co-conspirators, are jointly and severally liable for all damages sustained by [Plaintiff] by reason of each co-conspirator's misconduct,

including each co-conspirator's breaches and other wrongful conduct."). The Court, however, finds that those paragraphs are comprised of conclusory, unsupported allegations that do not satisfy *Iqbal/Twombley*. Thus, Plaintiff's claim of conspiracy fails to state a claim upon which relief can be granted because no harm or damages have been identified.

Based on the foregoing, the Court will dismiss Plaintiff's conspiracy claim at Count III of the FAC pursuant to Fed. R. Civ. P. 12(b)(6).

## IV. CONCLUSION

Accordingly, for the reasons articulated above, the Court DENIES the Motion to Dismiss filed by Atarsia with respect to Count I of the FAC and GRANTS the Motion to Dismiss filed by Atarsia with respect to Counts II and III of the FAC.

SO ORDERED.

Dated: November 30, 2015                                     s/Gershwin A. Drain
                                                            GERSHWIN A. DRAIN
                                                            United States District Judge

Certificate of Service

I hereby certify that a copy of the foregoing document was served upon the parties and counsel of record on November 30, 2015, by electronic and/or ordinary mail.

                                                            s/Teresa McGovern
                                                            Case Manager Generalist

21